THE DEPARTMENT OF REVENUE, Plaintiff-Appellee, v. ROMAN S. DOMBROWSKI ENTERPRISES, INC., *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—88—3537

Opinion filed January 16, 1990.—Rehearing denied May 1, 1990.

William J. Gerard, of William J. Gerard, Ltd., of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

This action was filed by the Department of Revenue (Department) in 1975 to collect a deficiency in retailer's occupation tax (ROT) payments owed by Roman S. Dombrowski Enterprises, Inc., from the corporation and its two stockholders and officers, Roman and Mary Dombrowski. After a default judgment entered against the corporation proved to be uncollectible, a trial was held in 1988 to determine whether Roman Dombrowski and his wife were personally liable for the deficiency. The trial judge found that Roman Dombrowski (defendant) was personally liable pursuant to section 13½ of the Retailers' Occupation Tax Act (ROT Act) (Ill. Rev. Stat. 1973, ch. 120, par. 452½), and defendant appeals.

In 1968, defendant, desiring to form a corporation for the purpose of operating a service station leased from Shell Oil Company, hired an accountant to effect the incorporation, review the lease, and assist in starting up the business. In late 1971, however, he discovered that his business had not been properly incorporated. Prior to this time, ROT returns filed with the State had been completed on the incorrect assumption that the corporation had been properly formed. Defendant properly incorporated on January 18, 1972, under the name of "Roman S. Dombrowski Enterprises, Inc."

On April 1, 1975, the Department filed its two-count complaint seeking to recover a ROT liability of $47,944.91 for the period January 1970 through August 1972. As indicated on an attached final tax assessment issued October 7, 1974, this figure represented a tax lia-

bility of $31,247.33; the remainder consisted of statutory penalties and interest. The first count sought recovery solely against the corporation; the second count sought recovery against Roman and Mary Dombrowski on the ground that the corporation was their alter ego, and on the ground that derivative liability existed based on section 13½ of the Retailers' Occupation Tax Act, which provides:

"Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision, or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act and who willfully fails to file such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department; and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation." Ill. Rev. Stat. 1973, ch. 120, par. 452½.

On May 7, 1975, the Dombrowskis filed a motion in lieu of an answer stating that a previous lawsuit had been filed against them by the Department based on the same tax liability, and that since judgment had been entered in favor of the Department in the amount of $2,198.43 in that action, the instant suit should be barred.

On November 3, 1975, the trial judge remanded the case to the Department for a hearing to determine the period covered by the earlier judgment. After a number of continuances, the Department held the court-ordered rehearing on August 10, 1976, and July 14, 1978. The resulting report and disposition issued by the Department indicate that defendant had submitted additional documents during the course of the rehearing which he claimed proved that he had not been given full credit for taxes paid. On reviewing these documents, the Department determined that the original assessment should be upheld, but the reason the documents were not taken into consideration was not given. Similarly, no mention was made of the prior lawsuit. A revised final assessment was issued based on the same amount of tax liability previously determined ($31,247.33), with an additional $32,634.09 assessed for penalties and interest, bringing the total amount claimed to $63,881.42.

On January 10, 1980, the trial judge entered an order based on the Department's findings. A default judgment was entered against the corporation on count I of the complaint in the amount of

$68,568.52 because additional interest had accrued. The order contained nothing regarding defendant's claim that an earlier suit barred further recovery.

After another series of lengthy continuances, a trial was held on September 28, 1988, on count II of the complaint, which sought to impose personal liability on the Dombrowskis. The judge ruled that he could not consider defendant's documents contradicting the amount of the deficiency determined by the Department on the ground that he did not have jurisdiction to review the agency action. In an order entered November 3, 1988, he held that Mary Dombrowski had no personal liability for the taxes owed, while Roman Dombrowski was held primarily liable for that period of the assessment when no corporate entity was in existence, and that he was also derivatively liable under section 13½ for the period when the corporation was in existence. A judgment in the amount of $31,247.33, the amount of tax owed exclusive of penalties and interest, was entered against defendant, which ruling was not contested by the Department.[1] A notice of appeal was filed by defendant on December 1, 1988.

## I

Defendant first argues that the circuit court erred in failing to consider documents he submitted at trial which, he claims, demonstrate that the Department did not give him full credit for taxes paid. He also claims that these documents, apparently the same as those he submitted to the Department during the administrative rehearing, establish that neither he nor the corporation owes more than an insignificant amount ($31.77) for ROT taxes. We find this argument untenable; therefore, we affirm the decision of the trial court.

■ Under the terms of the ROT Act, anyone who becomes obligated for due and unpaid taxes is initially sent a notice of tax liability. (Ill. Rev. Stat. 1973, ch. 120, par. 444.) If no protest is received within 20 days, the assessment becomes final; if a timely protest is made, the Department holds a hearing and subsequently issues a final assessment. (Ill. Rev. Stat. 1973, ch. 120, par. 444.) Once an assessment becomes final, the taxpayer may obtain judicial review of the agency determination only if he or she complies with the provisions of the Illinois Administrative Review Act (ARA) (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). (Ill. Rev. Stat. 1973, ch. 120, par. 444.) Section

---

[1]The November 3, 1988, order did not mention defendant's *res judicata* argument. Since this matter was not raised at the trial and is not raised by defendant on appeal, we need not consider the issue.

267 of the ARA, now codified as section 3—103 of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—103), provides that a person seeking judicial review of a final agency action must file an action in the circuit court within 35 days after service of the final agency determination. The Illinois Supreme Court has held:

> "[I]f a proceeding is not brought under the Administrative Review Act for judicial review of the Department's final assessment the assessment will be conclusive as to all questions affecting its merits. A defense as to the merits of the case must be raised through administrative review or it will be considered waived." *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 220, 311 N.E.2d 691, 693.

See also *Department of Revenue v. Jones* (1986), 141 Ill. App. 3d 968, 491 N.E.2d 117.

▪ Defendant now asks us to reverse the trial court's decision that judicial review of the Department's determination of tax liability would be improper. We find the trial court's ruling to have been properly taken under both the ROT Act and the ARA. The Department issued a final assessment on October 7, 1974, and defendant does not contend that the Department failed to serve him with notice thereof; consequently, defendant had 35 days from the date of service of the final assessment to file an action seeking judicial review of the agency determination. Having failed to file such an action, he has instead improperly sought judicial review of the Department's action as part of his defense to the instant lawsuit; but because of defendant's failure to comply with the ARA, we are not empowered to review the merits of the final assessment or the revised final assessment. *Jones*, 141 Ill. App. 3d 968, 491 N.E.2d 117.

## II

Having established that defendant may not challenge in this appeal the amount of the tax deficiency, we now address the two remaining arguments raised against the trial court's finding of personal liability. First, without clearly enunciating why, defendant asserts that his failure to pay the claimed tax deficiency is not a willful failure to pay taxes within the meaning of section 13½, set forth above. This argument is totally without merit and must be rejected.

A willful failure to pay taxes must be voluntary, conscious and intentional. (*Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 369 N.E.2d 1279.) A number of Illinois decisions have considered the meaning of this standard. In the case at bar, the trial judge found that defendant voluntarily failed to pay taxes in a

manner similar to that encountered in *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 476 N.E.2d 413, in which two taxpayers were found to have willfully failed to pay taxes when they admitted awareness of their responsibility to make monthly ROT payments and voluntarily used taxes collected to pay other corporate obligations.

    ■■ ■ The question of willful refusal to pay taxes is a question of fact, and the findings of the trial judge will not be disturbed unless they are against the manifest weight of the evidence. (*Department of Revenue v. Sopko, Inc.* (1980), 84 Ill. App. 3d 953, 406 N.E.2d 188.) Defendant has failed to make such a showing. Indeed, the record indicates he had a substantial role in the preparation and filing of his ROT returns and in the payment of his ROT taxes. He prepared preliminary ledgers which were used by his accountant to prepare the returns; he signed checks remitting ROT payments to the Department; and he appears to have personally mailed the returns. Defendant's business was not a large and complicated operation, having consisted of only a few employees. Moreover, for purposes of this appeal, we must accept the Department's conclusion that a substantial number of tax payments have not been made. (*Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 220, 311 N.E.2d 691, 693.) Taking these factors into consideration, it cannot be said that the trial court's finding that defendant willfully failed to pay taxes is against the manifest weight of the evidence. This case is clearly distinguishable from *Sopko*, where his accountant failed to follow the taxpayer's instructions to pay taxes owed as stated on a notice of tax liability, and where the accountant regularly underreported sales receipts without the taxpayer's knowledge. Similarly, this case is different from *Department of Revenue v. Corrosion Systems, Inc.* (1989), 185 Ill. App. 3d 580, 541 N.E.2d 858, where the taxpayer, in good faith, had the mistaken belief that no taxes were owed.

Defendant finally argues that since the Department's theory of liability asserted at trial was based on derivative liability under section 13½, the trial court erred in imposing primary liability on its own initiative for the period in which the corporation was not in existence. The trial court, it is claimed, committed reversible error in going beyond the allegations of the complaint to hold defendant personally liable. We note that the Department had undoubtedly known for years about the "defective" incorporation; we thus find it difficult to understand why it never took the simple step of moving to amend the complaint to change its theory of recovery accordingly.

    ■■ ■ However, this oversight need not be fatal to the Depart-

ment's position. This court can affirm a judgment even though it is based on incorrect reasoning as long as there are other valid reasons of record to support the judgment. (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 478 N.E.2d 384.) In 1968, defendant advised the Department that he was conducting business under the name "Roman S. Dombrowski Enterprises, Inc.," and his ROT returns were filed under this designation. In such circumstances, defendant should be estopped from denying corporate tax liability. (W. Fletcher, Private Corporations §3986 (1982).) Alternatively, corporate tax liability can be imposed under the doctrine of the *de facto* corporation. (*Gunggoll v. Outer Drive Athletic Club* (1932), 349 Ill. 406, 182 N.E. 409; see also *United States Fidelity & Guaranty Corp. v. Putzy* (N.D. Ill. 1985), 613 F. Supp. 594; Fletcher, §§3761, 3776 through 3777 (1982).) Thus, derivative liability can be properly imposed under section 13½ for the tax periods before valid incorporation occurred in January 1972.

We recognize that there is some speculation that section 2.15 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1987, ch. 32, par. 2.15) and similar statutes have done away with the *de facto* corporation and estoppel concepts. See Fletcher, section 3762.1 (1982), citing section 2.15 of the Illinois Business Corporation Act, which states:

> "Upon the issuance of the certificate of incorporation by the Secretary of State, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence, except as against the State, that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this Act." (Ill. Rev. Stat. 1987, ch. 32, par. 2.15.)

However, no Illinois decision has adopted Fletcher's conclusion. See also *Putzy*, which implicitly assumes that the concept of the *de facto* corporation is still operable under Illinois law.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DiVITO, P.J., and BILANDIC, J., concur.